IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>    v.<br><br>SYED M. MAKKI,<br>[DOB: 03/08/1988]<br><br>                Defendant. | Case No. 24-00200-01-CR-W-HFS<br><br>**COUNT ONE**:<br>*Conspiracy to Commit Wire Fraud*<br>18 U.S.C. § 1349<br>NMT 20 Years' Imprisonment and/or a fine of NMT $20,000 Fine<br>NMT 3 Years' Supervised Release<br>Class C Felony<br><br>**COUNT TWO**:<br>*Conspiracy to Commit Money Laundering*<br>18 U.S.C. § 1956(h)<br>NMT 20 Years' Imprisonment and/or a fine of NMT $500,000 Fine or twice the value of the property involved in the transaction<br>NMT 3 Years' Supervised Release<br>Class C Felony<br><br>**COUNTS THREE and FOUR**:<br>*Interstate Transportation of Goods Obtained by Fraud*<br>18 U.S.C. § 2314<br>NMT 10 Years' Imprisonment and/or a fine of NMT $250,000 Fine<br>NMT 3 Years' Supervised Release<br>Class C Felony<br><br>ALLEGATIONS OF CRIMINAL FORFEITURE<br><br>$100 Mandatory Special Assessment Each Count |

I N D I C T M E N T

THE GRAND JURY CHARGES THAT:

**The Scheme**

1.      From on or about January 1, 2023, through March 31, 2024, throughout the United States, conspirators put malware on people's computers with a phone number on the computer to

call and falsely represented themselves as 'Microsoft' employees, banking officials, government employees, and law enforcement officers. Conspirators communicated with the victims, who were mostly elderly, by phone, text message, and in person, and convinced the victims that their money was not safe in banks and often that the victims were assisting law enforcement.

2. Having established relationships with the victims, the perpetrators of the scams had the victims liquidate bank and retirement accounts. Sometimes the conspirators had the victims mail cash or gift cards to them for 'safekeeping.' Other times, the conspirators had the victims use the money to buy gold bullion in the form of gold bars or gold coin. When the gold was delivered to the victims' homes, conspirators directed the victims to provide the gold for 'safekeeping' to a co-conspirator, including Makki.

3. Sometimes conspirators instructed the victims to package the gold and address it to the 'Department of Justice' in the name of a specific person, to further the false impression that victims were dealing with trustworthy officials. Makki and others drove to meet the victims, picked up the gold and in one instance, cash, and then transported it across state lines to co-conspirators.

**Victims**

4. On or about February 5, 2024, Victim 1, a 77-year-old Florida resident, was on her computer when a pop-up appeared stating that her computer was compromised and directing her to call 'Microsoft' at a certain number. When she called the number, a man told her that her bank accounts had been compromised and she needed to transfer her money to keep it safe. The man instructed her to electronically wire money from her bank account to a gold bullion company and to have the gold delivered to her house, so Victim 1 purchased $83,352 in gold bullion. On or about February 15, 2024, the men directed Victim 1 to put the gold into a metal lockbox and meet a driver at the CVS parking lot who would take the gold for 'safekeeping.' On or about

2

February 15, 2024, Victim 1 met Makki in a CVS parking lot in Indian River Shores, Florida, and delivered the gold bullion to Makki. Victim 1 lost a total of about $165,000 in the scheme.

5. On or about February 20, 2024, Victim 2, an 80-year-old Florida resident, received a visit at his home from two men who claimed they were 'U.S. Customs and Border Patrol agents' investigating stolen identities and that they had a warrant for Victim 2's arrest. The 'agents' told Victim 2 that their supervisor, 'Jamie Marshall,' would call him. 'Marshall' called Victim 2 and told him he could 'pay off' his warrant. 'Marshall' said Victim 2 would be helping his country by catching criminals who were committing social security fraud. 'Marshall' told Victim 2 that he needed to wire transfer his money to buy gold bullion, and that if anyone asked why he was doing this, he should say he was 'diversifying his assets.'

6. Victim 2 made several purchases of gold bullion and delivered them to conspirators, often giving them a 'code word' at the time of delivery. On or about March 14, 2024, Victim 2 was directed to meet a driver, who would pick up the gold. Victim 2 met Makki at a location in Bradenton, Florida, and delivered approximately $580,000 in gold bullion to Makki. Victim 2 lost a total of about $1.6 million in the scheme.

7. On or about January 11, 2024, Victim 3, a 68-year-old Virginia resident, was on her computer when a pop-up appeared stating that her computer was compromised and directing her to call 'Microsoft' at a certain number. When Victim 3 called the number, the man, who said his name was 'George Pease' told Victim 3 that money had been stolen from her bank account and the funds used to fund a Chinese child pornography site, so federal agencies were involved. 'Pease' told Victim 3 to call 'Alamdar Hamdani,' an attorney with the 'Department of Justice.' Hamdani told Victim 3 it was best to liquidate her bank account and use the money to purchase gold bars. Victim 3 liquidated her bank account and made four purchases of gold bullion. She

wrapped and addressed each package of gold bullion to 'Department of Justice, Alamdar Hamdani, 950 Pennsylvania, NW, Washington, D.C. 20530.'

8. 'Hamdani' told Victim 3 that a man would pick up the package of gold bullion for 'safekeeping.' The package was addressed as noted above to the 'Department of Justice' in Washington D.C. On or about March 18, 2024, Makki drove to Victim 3's residence in Parksley, Virginia, and picked up the package of gold bullion. Victim 3 lost a total of about $293,000 in the scheme.

9. In or about February 2024, Victim 4, an 80-year-old Virginia resident, was on his computer when a pop-up appeared saying his computer had been compromised. The pop-up had a 'Windows Support' number to call. When Victim 4 called the number, a woman told him funds had been moved out of his bank account; she then transferred him to someone supposedly with the bank's fraud department. That person transferred Victim 4 to 'Curt Williams' with the 'FDIC.' Williams told Victim 4 that he should buy gold to put in the bank's 'security locker' to keep his funds safe, and that an 'undercover agent' would pick up the gold and put it in the bank's 'security locker.'

10. On or about March 18, 2024, Makki attempted to contact Victim 4 in Centreville, Virginia to arrange to pick up gold bullion. Victim 4's daughter overheard Victim 4 talking on the phone and told him he was being scammed, so Victim 4 did not meet Makki and deliver gold to him. Victim 4 lost a total of about $608,780 in the scheme.

11. In or about March 14, 2024, Victim 5, a 69-year-old Pennsylvania resident, received an email stating that cryptocurrency had been bought with her PayPal account. Victim 5 called the number stated and told the man she didn't have a PayPal account, nor did she buy cryptocurrency. She was transferred to a man who claimed to be a bank official. The 'bank official' convinced Victim 5 that to get her money back she needed to buy gold coins. Victim 5 bought

4

about $194,880 in gold coins and was instructed to hand them over. On or about March 20, 2024, Makki drove to Victim 5's house in Philadelphia, Pennsylvania and picked up the gold bullion. Victim 5 lost a total of about $795,000.

12. On or about February 2, 2024, Victim 6, a 78-year-old Missouri resident, was on her computer when a pop-up appeared with an instruction to call 'Microsoft' at a certain number. When Victim 6 called the number, she was transferred to a 'security expert' who said her bank account had been hacked by someone in Israel. The 'security expert' told her the hackers had used money from her bank account to pay for gambling and child pornography and therefore the 'Department of Justice' ('DOJ') was involved. Victim 6 was transferred to 'Brandon Brown,' a 'DOJ attorney.'

13. 'Brandon Brown' instructed Victim 6 to convert funds from her bank account into gold bars, which would be kept in a 'DOJ' locker until she could get a new driver's license and Social Security number. Victim 6 made eight purchases and transfers of gold bullion packaged as instructed by 'Brown.' When employees at one of Victim 6's banks expressed concern about transfers to gold sellers, Victim 6 told the employee she was diversifying her assets, an explanation suggested to her by 'Brown.' On or about March 22, 2024, Victim 6 transferred her sixth purchase in gold bullion, worth approximately $84,938, to Makki at a Wal-Mart parking lot in West Plains, Missouri. Victim 6 lost a total of about $700,000.

14. On or about February 25, 2024, Victim 7, a 61-year-old Kansas resident, received a phone call from someone claiming to be 'Mark Johnson, an agent for the Federal Trade Commission.' 'Johnson' told Victim 7 her name was linked to numerous other banks and the government would seize all her accounts. 'Johnson' told her she needed to withdraw all her money to 'clean' it before it could be returned to her. 'Johnson' instructed Victim 7 that she needed to withdraw all her money in cash and wait for it to be picked up outside her house. On or about

March 22, 2024, Makki drove to Victim 7's residence in Derby, Kansas and picked up $40,000 in cash. Victim 7 lost a total of about $110,000.

15. In or about March 2024, Victim 8, a 77-year-old Kansas resident, was in her home when an alarm went off on her computer and she should call 'Microsoft' at a certain number. The 'Microsoft' employee told Victim 8 that her computer had been infected with a virus and child pornography was on her computer. She was put in touch with 'Brandon Brown' at 'DOJ,' who instructed Victim 8 to buy gold, to package her gold, and it would be picked up for 'safekeeping.' On or about March 23, 2024, Makki drove to meet Victim 8 at a CVS in Derby, Kansas and picked up gold bullion from her. Victim 8 lost a total of about $510,696.

16. On or about March 14, 2024, Victim 9, an 80-year-old Colorado resident, was on her computer when a pop-up appeared stating that her computer was locked, and she needed to call 'Microsoft.' The man who answered the phone told Victim 9 that her computer had been hacked and there was child pornography on her computer. He then transferred Victim 9 to another man, 'Mark Watson,' who was purportedly a bank security expert. 'Mark Watson' told Victim 9 that he had to report the incident to the 'FTC' because it was a federal offense. He told Victim 9 she should move her money into something physical and suggested that she use the money to buy gold. Victim 9 wired $429,100 from her bank account to buy six gold bars, which were delivered to her home. 'Mark Watson' told Victim 9 someone would pick up the bars and transport them to 'DC' to be kept in a secure locker, and that she should give him the code '1204.'

17. On or about March 25, 2024, Makki met Victim 9 at A Dog's World in Littleton, Colorado. Victim 9 provided the code '1204' as directed and transferred the gold bullion to Makki. Victim 9 recorded the license plate number of Makki's rented Chrysler Pacifica. Victim 9 lost a total of about $429,100.

18. In or about February 2024, Victim 10, a 78-year-old Missouri resident, received a call from a man, 'Mark Watson,' who told her that her money was no longer safe. 'Mark Watson' told Victim 10 that she should convert the funds in her bank account to buy gold. Victim 10 bought gold bullion twice. 'Mark Watson' told Victim 10 that someone would pick up the gold from her for 'safekeeping.'

19. On or about March 27, 2024, Makki drove to Victim 10's house and picked up ten gold bars worth approximately $700,000. Victim 10 lost a total of about $1.8 million.

20. Microsoft did not post the messages on the victims' computers. None of the people the victims spoke to worked for Microsoft, banks, nor any federal agency. The gold and cash were not kept for the victims but rather taken by the conspirators. The ten victims lost a total of approximately $6,383,432.

## COUNT ONE
### (Wire Fraud Conspiracy)

21. The allegations contained in Paragraphs 1 through 20 of this Indictment are re-alleged and incorporated by reference.

22. From on or about January 1, 2023, through March 31, 2024, in the Western District of Missouri and elsewhere, defendant SYED MAKKI and other persons both known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree with each other to commit offenses against the United States, that is having devised and intending to devise a scheme for obtaining money and property by means of materially false and fraudulent pretenses, representations and promises, transmitted or caused to be transmitted by means of wire communications in interstate commerce writings, signs, and signals for the purpose of executing such scheme and artifice, to wit: MAKKI communicated with co-conspirators using an App on his cellular telephone whose servers were located in California and Washington, D.C. regarding victim location, in violation of Title 18, United State Code, Section 1343.

## Overt Acts

23. In furtherance of the conspiracy and to accomplish the object of the conspiracy, one or more members of the conspiracy committed and caused to be committed the following overt acts in the Western District of Missouri and elsewhere.

24. On or about February 12, 2024, Makki rented a gray Nissan Altima with Florida license plates.

25. On or about February 15, 2024, Makki drove the Nissan Altima to pick up $83,352.36 in gold bullion from Victim 1 in Indian River Shores, Florida.

26. On or about March 11, 2024, Makki rented a silver Toyota Camry with Alabama license plates.

27. On or about March 14, 2024, Makki drove the silver Toyota Camry to pick up $586,099 in gold bullion from Victim 2 in Bradenton, Florida.

28. On or about March 18, 2024, Makki drove a blue Toyota Camry with New Jersey license plates to pick up $70,530.27 in gold bullion from Victim 3 in Parksley, Virginia.

29. On or about March 20, 2024, Makki drove the Toyota Camry to pick up $194,880 in gold coins from Victim 5 in Philadelphia, Pennsylvania.

30. On or about March 21, 2024, Makki rented a white Audi with West Virginia license plates.

31. On or about March 22, 2024, Makki drove the white Audi to pick up $84,938.57 in gold bullion from Victim 6 in West Plains, Missouri.

32. On or about March 22, 2024, Makki drove the white Audi to pick up $40,000 in cash from Victim 7 in Derby, Kansas.

33. On or about March 23, 2024, Makki drove the white Audi to pick up about $70,172.01 in gold bullion from Victim 8 in Gardner, Kansas.

34. On or about March 25, 2024, Makki rented a black Chrysler Pacifica with California license plates.

35. On or about March 25, 2024, Makki drove the black Chrysler Pacifica to pick up $429,100 in gold bullion from Victim 9 in Littleton, Colorado.

36. On or about March 26, 2024, Makki returned the Chrysler Pacifica and rented a silver Toyota Sienna with California license plates.

37. On or about March 26, 2024, Makki drove the silver Toyota Sienna to pick up approximately $700,000 in gold bullion from Victim 10 in Kansas City, Missouri.

38. On or about March 27, 2024, Makki drove the gold bullion he picked up from Victims 9 and 10 to a gas station in Jacksonville, Illinois. That same date, Illinois state troopers arrested Makki in possession of 16 gold bars he had picked up from Victims 9 and 10.

All in violation of Title 18, United States Code, Sections 1343 and 1349.

## COUNT TWO
### (Money Laundering Conspiracy)

39. The allegations contained in Paragraphs 1 through 20 of this Indictment are re-alleged and incorporated by reference.

40. From at least January 1, 2023, to March 31, 2024, in the Western District of Missouri, and elsewhere, the defendant, SYED MAKKI, did knowingly combine, conspire, confederate, and agree with other, both known and unknown to the grand jury, to commit an offense, to wit: knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, did conduct, and attempt to conduct, a financial transaction which in fact involved the proceeds of a specified unlawful activity, that is, Conspiracy to Commit Wire Fraud and Wire Fraud, in violation of Title 18, United States Code, Sections 1349 and 1343, knowing that the transaction was designed in whole and in part to conceal

and disguise the nature, location, source, ownership, and control of the proceeds of such specified unlawful activity, in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

## COUNTS THREE and FOUR
### (Interstate Transportation of Property Obtained by Fraud)

41. The allegations contained in Paragraphs 1 through 20 of this Indictment are re-alleged and incorporated by reference.

42. On or about each of the dates set forth below, in the Western District of Missouri, the defendant, SYED MAKKI, having devised and intended to devise the scheme and artifice to defraud described above, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transport and cause to be transported, gold bullion from the below-listed victims the Western District of Missouri, to another state, in the execution of the above-described scheme and artifice to defraud the below-listed individuals of property having a value of $5,000 or more.

| Count | Dates of Offense | Description |
| --- | --- | --- |
| Three | 3/21/2024 to 3/22/2024 | Makki picked up approximately $84,000 in gold bullion from Victim 6 in West Plains, Missouri, and transported it to Kansas. |
| Four | 03/26/2024 to 3/27/2024 | Makki picked up approximately $700,000 in gold bullion from Victim 10 in Kansas City, Missouri, and transported it to Illinois. |

All in violation of Title 18, United States Code, Section 2314.

## ALLEGATION OF FORFEITURE ONE

43. The allegations of Counts One, Three, and Four of this Indictment are re-alleged and fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant has an interest, pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C), Title 28, United States Code, Section 2461(c), and the procedures outlined in Title 21, United States Code, Section 853.

44. Upon conviction of any violation of Title 18, United States Code, Sections 1349 or 2314, defendant shall forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

45. The property subject to forfeiture includes, but is not limited to, the following:

    a. <u>Money Judgment and Other Property Involved In or Traceable to the Offenses</u>:

Any interest or proceeds traceable thereto in 16 gold bars recovered from Makki in Jacksonville, Illinois, and money obtained by defendant Syed Makki, in that such sum in aggregate is involved in, or is derived from, proceeds traceable to the offenses set forth in Counts One, Three and Four.

    b. <u>Substitute Assets</u>:

If the property described above as being subject to forfeiture as a result of any act or omission of the defendant.

    (1) cannot be located upon the exercise of due diligence;

    (2) has been transferred or sold to, or deposited with a third person;

    (3) has been placed beyond the jurisdiction of the Court;

    (4) has been substantially diminished in value; or

    (5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendant up to the value of the above-forfeitable property or to seek return of the property to the jurisdiction of the Court so that the property may be seized and forfeited.

All pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), and the procedures outlined in Title 21, United States Code, Section 853(p)

## ALLEGATION OF FORFEITURE TWO

46. The allegations of Count Two of this Indictment are re-alleged and fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendant has an interest, pursuant to the provisions of Title 18, United States Code, Section 982(a)(1), and the procedures outlined in Title 21, United States Code, Section 853.

47. Upon conviction of any violation of Title 18, United States Code, Section 1956, the defendant shall forfeit to the United States any property constituting, or derived from, proceeds the person obtained directly or indirectly pursuant to Title 18, United States Code, Section 982(a)(1).

48. The property subject to forfeiture includes, but is not limited to, the following:

    a.    <u>Money Judgment Involved In or Traceable to the Offenses</u>:

        Any interest or proceeds traceable to the offenses set forth in Count Two.

    b.    <u>Substitute Assets</u>

        If the property described above as being subject to forfeiture as a result of any act or omissions of the defendant.

        (1)    cannot be located upon the exercise of due diligence;

        (2)    has been transferred or sold to, or deposited with a third person;

        (3)    has been placed beyond the jurisdiction of the Court;

(4) has been substantially diminished in value; or

(5) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendant up to the value of the above-forfeitable property or to seek return of the property to the jurisdiction of the Court so that the property may be seized and forfeited.

All pursuant to the provisions of Title 18, United States Code, Section 982(a)(1) and the procedures outlined in Title 21, United States Code, Section 853(p)

A TRUE BILL.

/s/Emily Schrader
FOREPERSON OF THE GRAND JURY

/s/Kathleen D. Mahoney
Kathleen D. Mahoney
Assistant United States Attorney

Dated: 9/10/2024
Kansas City, Missouri