**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SYED M. MAKKI,<br><br>Defendant. | Case No. 24-00200-01-CR-W-DGK |

**ORDER GRANTING VICTIM M.K.'S RULE 32.2(c) PETITION**

This criminal case arises from a conspiracy to defraud M.K. and others of property by materially false and fraudulent pretenses transmitted via interstate wire communications. Defendant Makki was the sole coconspirator brought to justice; the others are unidentified or residing overseas beyond the law's reach.

Now before the Court is the Court's Preliminary Order of Forfeiture, ECF No. 56, and M.K.'s Petition for Restitution filed pursuant to Federal Rule of Criminal Procedure 32.2(c)(1), ECF No. 64. In sum, M.K. asserts she is a third-party victim with a superior legal interest in the ten gold bullion bars that the Government is seeking to claim via forfeiture. The Government responds that she has no greater interest in the gold bars than a general creditor.

On September 8, 2026, the Court held an ancillary hearing pursuant to Federal Rule of Criminal Procedure 32.2(c)(1) at which M.K. presented uncontested evidence about her ownership interest in ten specific gold bullion bars the Government seized when it arrested Defendant. After carefully reviewing the record and applicable law, the Court finds M.K. has proven by a preponderance of the evidence that her legal interest in the property at the time of the offense giving rise to the forfeiture was superior to Defendant's, and thus superior to the Government's.

The Court amends its preliminary order of forfeiture to exclude the ten gold bullion bars and orders they be returned to M.K. as soon as possible, but in no event later than noon on October 9, 2026.

M.K.'s petition is GRANTED.

**Standard**

A third-party claiming property that the Government seeks to have criminally forfeited cannot intervene in the criminal action against the Defendant. Instead, she must wait until the Court has entered a forfeiture order based on a criminal conviction and then petition the Court for an ancillary hearing to adjudicate her interest in the property.

The procedures governing the ancillary proceeding are set forth in 21 U.S.C. § 853(n) and Fed. R. Crim. P. 32.2(c). Once the Court finds that the property is subject to forfeiture and enters a preliminary order of forfeiture in accordance with Rule 32.2(b)(2), the Government may publish notice of the forfeiture to third parties. The Court may then commence an ancillary proceeding to determine if the defendant had an interest in the property that is forfeitable to the Government. Although the preliminary order of forfeiture is final as to a defendant upon entry of judgment, it remains preliminary as to third parties until the ancillary proceeding is concluded under Rule 32.2(c).

At the ancillary proceeding, the burden of proof is on the third-party claimant to demonstrate that she falls within one of two categories described in § 853(n)(6). In this case, M.K. must prove by a preponderance of the evidence that she had an interest in the property that was superior to the Defendant's "at the time of the commission of the acts which gave rise to the forfeiture of the property under this section." 21 U.S.C. § 853(n)(6)(A); *United States v. Fabian*, 764 F.3d 636, 338 (6th Cir. 2014). If she meets her burden of proof, the Court will amend the preliminary order of forfeiture.

**Background**

The uncontested facts here are as follows.

On or about January 1, 2023, through March 31, 2024, throughout the United States, conspirators put malware on people's computers with a phone number on the computer to call and falsely represented themselves as "Microsoft" employees, banking officials, government employees, and law enforcement officers. Conspirators communicated with the victims, who were mostly elderly, by phone, text message, and in person, and convinced the victims that their money was not safe in banks and often that the victims were assisting law enforcement.

In February of 2024, Defendant Makki and his coconspirators deceived M.K., who was then seventy-eight years-old, into believing that she had been the victim of identity theft and that her social security number and financial accounts had been compromised. They convinced her that Defendant Makki was Mark Watson, a Special Agent with the United States Treasury Department, and that in order to receive a new social security number and open new accounts she must take money out of her existing accounts, convert it to gold bars, and give it to Agent Watson for safekeeping.

On March 18, 2024, M.K. wired $703,072.30 from her bank account to the bank account of SB Bullion, Inc. ("SB Bullion"), to purchase ten gold bullion bars weighing approximately one kilogram each. On or about March 21, 2024, SB Bullion, Inc., shipped ten gold bullion bars to M.K.'s home address in Kansas City, Missouri. These bars bore the following unique serial numbers: N255618, N255628, N255629, N255630, X37952, BC66736, BC68916, BC68918, BC68919, and BC68920.

On or about March 26 or March 27, 2024, Defendant drove to M.K.'s house. M.K. then gave "Agent Watson" these gold bars based on the understanding that they would be held for

safekeeping by the United States Government. This brought the total the conspirators defrauded M.K. out of to approximately $1.8 million.

On or about March 27, 2024, law enforcement officers stopped Defendant's vehicle at a Love's Travel Stop in Jacksonville, Illinois, pursuant to a search warrant. Defendant was the car's sole occupant. During an inventory search, officers found sixteen gold bars. Ten were the gold bars purchased by M.K. on March 18, as proven by the matching serial numbers. The other six belonged to another victim.

A grand jury indicted Defendant on four counts. On November 24, 2025, Defendant pled guilty by agreement to Count One, Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. § 1349. As part of the plea agreement, Defendant also agreed to the allegation of Criminal Forfeiture One. The property subject to forfeiture in Criminal Forfeiture One was "any interest or proceeds traceable thereto in 16 gold bars recovered from Makki in Jacksonville, Illinois, and money obtained by" him that was "involved in, or is derived from, proceeds traceable to the offenses set forth in Counts One, Three and Four." Indictment ¶ 45, ECF No. 1.

In its motion for a preliminary order of forfeiture, ECF No. 55, the Government sought forfeiture of the ten gold bars purchased by M.K., but not the other six gold bars recovered. Mot. ¶ 4, ECF No. 55.[1] The preliminary forfeiture motion also sought a money judgment in an amount to be determined by the Court at sentencing.

[1] As for what happened to the remaining six gold bars, the Government reports that, "Law enforcement previously returned six of the gold bars to a victim." While this obviously raises an equitable question—and perhaps a Due Process question or an estoppel question—of how the Government can treat M.K. differently than the victim who had her gold bars returned to her or raise arguments with respect to M.K. it did not raise with respect to the other victim, that is not an issue the Court has been asked to decide, nor an issue the Court needs to address given its ruling.

The Court subsequently entered a Preliminary Order of Forfeiture identifying the ten gold bars purchased by M.K., which the Government seized from Defendant Makki as subject to forfeiture, as well as a money judgment to be determined by the Court at sentencing. ECF No. 56.

On May 21, 2026, M.K., through pro bono counsel, filed a petition asserting her legal ownership interest in the ten gold bars. She also appeared at sentencing and asked for the return of her gold bars. During the sentencing hearing, the Government asserted that the disposition of the gold bars was a decision for the Department of Justice to make and questioned the Court's authority to order the bars returned to M.K.

The Court did not enter a final order of forfeiture and took the issue under advisement. It subsequently invited the parties to brief the issue, and they did so. ECF Nos. 71, 73, 76. On September 8, 2026, the Court held an ancillary hearing pursuant to Rule 32.2(c).

**Discussion**

As a threshold matter, the Court holds M.K. has both constitutional and statutory standing to challenge forfeiture, because she purchased the gold bars at issue and so has an ownership interest in them. *See U.S. v. One Lincoln Navigator 1998*, 328 F.3d 1011, 1013 (8th Cir. 2003) (noting one with an ownership interest has standing to challenge forfeiture).

With respect to the merits, the Court holds M.K. has established that she is entitled to the return of the ten gold bars. To prevail, M.K. must prove by a preponderance of the evidence that she had an interest in the property that was superior to Defendant's.[2] The relevant moment in time at which the Court compares M.K.'s and Defendant's legal interests in the gold bars is "at the time

[2] The other category is for a petitioner who "is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of purchase reasonably without cause to believe that the property was subject to forfeiture under this section." 21 U.S.C. § 853(n)(6)(B). That is, the petitioner purchased from the defendant something that was subject to forfeiture, but at the time the petitioner purchased it, did not have cause to believe the property was subject to forfeiture. This exception would be applicable if Defendant, *after* taking the ten gold bars from M.K., had subsequently sold them to a third-party who had no reason to believe the gold bars were stolen. Although M.K. intimates that this exception applies to her as well, it does not appear applicable.

of the commission of the acts giving rise to the forfeiture." That time is the moment when Defendant took the ten gold bars from M.K. for "safekeeping" under the guise of being a U.S. Treasury agent.[3]

The record established beyond any possible doubt that M.K. purchased the ten gold bars from SB Bullion on March 18, 2024. On that date, ownership of the gold bars transferred from SB Bullion to her, and she became the owner. She was still the owner a week or so later when Defendant took them from her for "safekeeping." At that moment, M.K. relinquished possession, but not title, of the gold bars to Defendant. Defendant, like any thief who steals something from its rightful owner, acquired at best a possessory interest in the gold bars.

Comparing Defendant's and M.K.'s interests in the gold bars under Missouri law, the Court holds M.K. was (and is) the true owner under Missouri law, and her legal rights as the true owner were superior to Defendant's at the time of the commission of the acts giving rise to the forfeiture. *See State v. Patchen*, 652 S.W.2d 268 (Mo. Ct. App. 1983) (echoing Oliver Wendell Holmes, Jr., in observing the rights of a possessor are "superior to all the world *except the true owner*") (emphasis added). Because M.K. has proven that her legal interest in the property at that time was superior to Defendant's, she has proven her legal interests are superior to the Government's, and she prevails under 21 U.S.C. § 853(n)(6)(A).

The Government's arguments to the contrary are unavailing. They rest on analogizing to results in cases which are not remotely factually analogous to this one. *See, e.g.*, *United States v.*

[3] The relevant time is not when Defendant's crime was complete. The crime Defendant pled guilty to, Conspiracy to Commit Wire Fraud, was probably complete years before the conspirators ever contacted M.K.; it was certainly complete before M.K. bought the ten gold bars at issue, because Defendant's crime was complete when he *agreed to join* the conspiracy, not when he committed an overt act in furtherance of the agreement. *See United States v. Rogers*, 769 F.3d 372, 380 (6th Cir. 2014) (holding an overt act in furtherance of agreement was not required to convict defendant of conspiracy to commit wire fraud under 18 U.S.C. § 1349). The relevant time here is when the *commission of the acts giving rise to the forfeiture of the property* occurred. This was when Defendant took the gold bars from M.K. Until that time, there was no act giving rise to Defendant having a possessory interest in property—the gold bars—for which the Government could seek forfeiture.

*Eldick*, 223 F. App'x. 837, 840 (11th Cir. 2007) (holding the defendant's brother, who owned the healthcare practice from which he claimed the defendant had embezzled funds, which he claimed were subsequently used to purchase property and fund financial accounts that defendant forfeited, did not have standing to challenge the forfeiture); *United States v. BCCI Holdings (Luxembourg) S.A.*, 69 F. Supp. 2d 36, 59 (D.D.C. 1999) (citing *United States v. BCCI Holdings (Luxembourg), S.A.*, No. 91-0655(JHG), 1997 WL 695668, at *6 (D.D.C. Aug. 26, 1997) (holding funds Citibank intentionally wire transferred to BCCI became part of the general deposits of BCCI, and thus part of BCCI's estate, before BCCI was convicted and the forfeiture ordered entered, thus the wire transfers deposited into BCCI were subject to forfeiture, and the senders became general depositors). These cases are simply not analogous to the facts here. Indeed, in the same section of the *BCCI Holdings* decision cited by the Government, the *BCCI* court makes an observation that supports M.K.'s position: "Funds that actually belong to a third party may not, of course, be forfeited in a criminal case, even if the money is found in the defendant's bank account." *BCCI Holdings, Luxembourg, S.A.*, 69 F. Supp. 2d at 59. M.K.'s position here is even stronger than someone who deposited money to a defendant's bank account. The property at issue here is unique and not fungible—ten gold bars with individual serial numbers—not deposits in a bank account, which could have been comingled with other, completely interchangeable funds. In short, the Government's attempt to analogize M.K. to someone who surrendered "title"[4] to her property is misguided.

For the reasons stated above, the Court will amend its preliminary order of forfeiture to exclude the ten gold bullion bars with serial numbers N255618, N255628, N255629, N255630,

[4] "Title" is the word used in the Government's brief. Govt.'s Resp. at 6, ECF No. 73. Nothing in the record suggests M.K. ever did anything to transfer title to the gold bars to Defendant. At most, M.K. and Defendant formed a bailor-bailee relationship under Missouri law with respect to the ten gold bars. In that event, M.K. would still possess superior legal rights to Defendant and be entitled to the gold bars' return.

X37952, BC66736, BC68916, BC68918, BC68919, and BC68920. The Court orders these gold bars be returned to M.K. as soon as possible, but in no event later than noon on October 9, 2026.

**IT IS SO ORDERED.**

Date: September 17, 2026

/s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT